[Civ. No. 13334. First Dist., Div. One. May 7, 1947.]

E. JENSEN, Appellant, v. BEATRICE FRIEDMAN, Respondent.

Mueller & Westover for Appellant.

Sullivan, Roche, Johnson & Farraher for Respondent.

BRAY, J.—Appeal from judgment for defendant holding that a deed absolute in form was in fact an equitable mortgage.

The defendant and her late husband, Aaron Friedman, who died November 29, 1940, were indebted to Louis Stoff

(plaintiff's assignor for collection, who for convenience will be hereafter referred to as plaintiff) in the sum of $14,250. While so indebted, defendant and her husband executed the following documents:

(1) Promissory note to plaintiff dated May 14, 1940, in the sum of $10,750 payable in monthly installments with interest, all unpaid balance to become due May 14, 1943.

(2) Promissory note to plaintiff, dated May 15, 1940, in the sum of $3,500 due two years from date.

(3) An assignment to plaintiff of the rents of certain real property herein referred to as the Oak Street property, to secure the payment of the above $3,500 note.

(4) A first deed of trust to Bank of America of the Oak Street property and a chattel mortgage of the furniture, to secure a promissory note made by defendant and her husband to the bank in the sum of $15,000.

(5) A second deed of trust of the Oak Street property to trustees for plaintiff to secure the payment of the $3,500 note above mentioned.

(6) A deed of the Oak Street property subject to the above mentioned liens to the City Title Insurance Company to hold the property for plaintiff, to be conveyed to him or his nominee, upon his request.

(7) An agreement between plaintiff and his wife (for convenience all documents will be treated as if made by or to plaintiff alone), and defendant and her husband, which after reciting the execution of the deed last mentioned and the fact that it conveyed the real property to the City Title Insurance Company under a "holding agreement," "for the account of" plaintiff, stated: "Whereas, it is the intention of the parties hereto that said property be held for the account of the said first parties until such time as said first parties elect to sell said property. Now, therefore, in consideration of the premises, the parties hereto agree as follows: That the first parties may sell or cause to be sold said real property whenever they may elect so to do; that upon the sale of said real property any moneys derived from said sale over and above the unpaid balance of the encumbrances now on said property will be applied towards the payment of principal and interest of that certain unsecured promissory note dated May 14, 1940, made by Aaron Friedman and Beatrice Friedman, his wife, to Louis D. Stoff in the amount of $10,750."

At plaintiff's request and pursuant to said agreement, the City Title Insurance Company on December 30, 1940, deeded the property to plaintiff. On February 17, 1943, pursuant to the power of sale in said agreement, plaintiff sold the property for $22,500. Out of this sum he paid $15,000 to the Bank of America in payment of the note and deed of trust hereinbefore mentioned under (4), and $3,500 to the payment of the note hereinbefore mentioned under (2), and the deed of trust mentioned under (5). The balance of $4,000 he paid himself on the $10,750 note hereinbefore mentioned under (1), leaving a balance due on that note of $6,750. Seven months after the sale plaintiff (through his assignee) brought this action to recover the balance.

Defendant, by her amended answer, set up the defense that the deed to the City Title Insurance Company and the power of sale in the agreement were given as security for the payment of this promissory note and that, therefore, the action is barred by the provisions of section 580a and 580c of the Code of Civil Procedure, as they existed at the time of the execution of the various instruments (1) to (7) hereinbefore mentioned.

At that time, section 580a provided that whenever a money judgment was sought for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale on real property or any interest therein was given as security, such action must be brought within three months of the time of sale under such deed of trust or mortgage. Section 580c provided: ''No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property hereafter executed in any case in which the real property has been sold by the mortgagor [mortgagee] or trustee under power of sale contained in such mortgage or deed of trust.''

The trial court held that the deed was intended as a mortgage with power to sell, given as security for the payment of the $10,750 note, and hence this action to recover the deficiency is barred by the code provisions above mentioned.

The main question in the case is, was the conveyance of the real property, although absolute in form, a mortgage?

Section 2924 of the Civil Code provides: ''Every transfer of an interest in property, *other than in trust*, made *only* as a security for the performance of another act, is to be deemed a mortgage. . . .'' (Emphasis added.)

Appellant contends that the conveyance is not a mortgage within the meaning of that section because, first, it comes within the exception "other than in trust" because it is an assignment for the benefit of creditors, and secondly, if given as security, it was not given *only* for that purpose.

At the start, it will be well to dispose of appellant's contention that the determination of these questions is a question of law to be determined solely from an examination of the documents, and that parol evidence cannot be considered in this connection. Appellant cites some general authorities on the interpretation of language in instruments, and *Union Oil Co.* v. *Union Sugar Co.*, 76 A.C.A. 707, 725 [173 P.2d 700] (hearing granted in Supreme Court), which are not in point. If this were the law, then no deed absolute on its face could ever be construed to be a mortgage. It is not the law. "Whether a deed absolute in form be a mortgage, is a question of intention to be inferred from all the facts and circumstances of the transaction in which the deed was executed, taken in connection with the conduct of the parties after its execution." (*Montgomery* v. *Spect*, 55 Cal. 352, 353.) "The rule is established in California and elsewhere that a deed absolute on its face may in equity cases be shown by parol evidence to have been intended as security for a debt or obligation." (17 Cal.Jur. 776, and a long list of cases set forth in n. 20.) *Beeler* v. *American Trust Co.*, 24 Cal.2d 1 [147 P.2d 583], shows how far the courts have gone on this subject. In that case the debtor gave the bank a deed absolute in form, and, in addition, an affidavit to the effect that the deed was an absolute conveyance, reserving to the grantor only a lease and option to purchase. The court held that it was proper to admit parol evidence to show that in spite of the terms of the affidavit, the deed was actually a mortgage.

Two of the cases cited by appellant on this point (*Sheehan* v. *Sullivan*, 126 Cal. 189 [58 P. 543]; *Davis* v. *Stewart*, 31 Cal.App.2d 574 [88 P.2d 734]) do not support appellant's position. They hold just the contrary, that parol evidence is admissible for this purpose.

The difference between an assignment for the benefit of creditors and a mortgage is set forth in Tiffany on Real Property, third edition, volume 5, page 275, as follows: "A conveyance made to a trustee to secure a debt or debts is to be distinguished from one made to a trustee for the purpose

of effecting the payment of debts. A conveyance of the latter character, ordinarily known as an assignment for the benefit of creditors, involves a complete divestiture of the grantor's title to the property conveyed, he having no right to redeem by paying the debts, and having merely a resulting trust as to any surplus which may possibly remain after the debts are paid, while a conveyance in trust made merely for purposes of security does not, any more than does a mortgage in ordinary form, divest the grantor or mortgagor of the rights of an owner, he having still a right to redeem by paying the indebtedness.''

The arrangements under which the various instruments herein set forth were made, were between Aaron Friedman, now deceased, and plaintiff. Plaintiff testified that it was his understanding that had the $10,750 note been paid off at any time prior to when he sold the property, he would not have sold the property but would have returned it to the Friedmans; that any balance left over from the sale of the property and the application of the proceeds would have been returned to the Friedmans. Had the prior indebtedness to the bank and the $3,500 debt to plaintiff been paid off, plaintiff testified that he would not have returned the property until the $10,750 note was satisfied. From the testimony of plaintiff it is clear that the conveyance of the title was not absolute, that the Friedmans reserved an interest in the property, and that the deed was given only as security.

In the case of *Heath* v. *Wilson*, 139 Cal. 362 [73 P. 182], under facts apparently much more strongly indicating an assignment for benefit of creditors than in our case, the court held the deed to be a mortgage. There the deed was absolute in form. Contemporaneously with the execution of the deed, the grantor and grantee verbally agreed that the property should be held in trust for certain uses and purposes which were subsequently set forth in an instrument of even date with the deed. This provided that the grantee was to lease the property and receive the rents, issues and profits thereof, to sell it, or any part of it, to exchange it for other property, to mortgage it, and to apply the rents, income, profits and proceeds, after payment of taxes, etc., and the expenses of the trust, to the payment of all liens and charges of every kind on the property; then to the payment of certain debts of the grantor enumerated in a certain schedule; the income from the balance to be invested and reinvested and the profits

thereof to be paid to the grantor for the term of her natural life, and in case of her death, the balance to go to her children. The court held that the transaction constituted a mortgage. "While it [the deed] transferred the legal title, it transferred it as security for the creditors" named in the schedule. ". . . it [the conveyance] was not intended as an absolute disposition of the property. . . ." Nor was the conveyance in our case. The case then goes on to distinguish the facts from those in the case of *Sabichi* v. *Chase,* 108 Cal. 81, 86 [41 P. 29], a case strongly relied upon by the appellant here. The court said: "It is claimed that this case falls within the rule laid down in *Sabichi* v. *Chase,* 108 Cal. 86 [41 P. 29], in which case the instrument was declared to be an assignment for the benefit of creditors. The case here, however, is very different from the facts in *Sabichi* v. *Chase.* There the conveyance to the trustees was of all the property of the debtors, for the benefit of certain preferred creditors. One of the conditions was, that the debtors should be released from all liability to the creditors named. The trustees were authorized to carry on the business of the partnership firm, call a meeting of creditors every six months, and report their proceedings to such meeting. It is plain that the conveyance in that case was an assignment of all the property of the assignees for the benefit of creditors. It is true, the instrument provided that the surplus, if any, was to be returned to the assignor, but this would follow as a matter of law in case of any assignment, whether stated in the instrument or not. The court, in the opinion in the above cited case, adopted the definition given in *Cadwell's Bank* v. *Crittenden,* 66 Iowa, 240 [23 N.W. 646]: 'If the intention of the debtor is merely to secure his debt to one or more of his creditors, and the conveyance is not intended as an absolute disposition of his property, but he reserves to himself a right therein, the conveyance will be treated as a mortgage, even though the debtor is insolvent at the time, and it covers all his property, and but a portion of his debts are secured by it.' The case at bar falls within the above definition"; and ours does also.

In this case the fact that the conveyance was to the City Title Insurance Company to hold "for the account of" plaintiff to convey to him on demand and the power of sale given in the agreement (No. 7) to plaintiff does not change the character of the transaction. City Title Insurance Company was a mere depository of the title, and the agent of plaintiff

to deliver it to whom and when instructed so to do by plaintiff. The company had no power over the title nor the property other than to transfer it as directed by plaintiff.

The relationship of debtor and creditor continued to exist after the execution of the deed. That definitely proves it to be a mortgage. (*Beeler* v. *American Trust Co., supra,* 24 Cal.2d 1.) "In such cases, the central fact to be found is, the existence of an indebtedness at the time of the transaction, and a continuation of the relation of debtor and creditor." (*Montgomery* v. *Spect, supra,* 55 Cal. 352, 353.) That the debt continued on is attested, among other things, by this very action which is brought for the unpaid balance of the $10,750 note. If the conveyance were in trust, or as an assignment for the benefit of creditors, or any other sort of trust, it would not have been necessary for plaintiff to execute the assignment of rents hereinbefore mentioned (No. 3) or the deed of trust given to secure the $3,500 note (No. 5).

Appellant contends that because of the right given plaintiff to sell, the conveyance was given for more than security; that this right to sell accompanying the security feature takes it out of the category of "only as a security," provided for in section 2924 of the Civil Code. This reasoning is a little hard to follow, because it would entirely eliminate any mortgage with power to sell. The power to sell is only the remedy for the foreclosure of the lien given as security, and as said in 25 California Jurisprudence 30, referring to deeds of trust (obviously the same would be true of mortgages) : "Power to sell does not change the character of the instrument" nor prevent it from being a mortgage. (*Heath* v. *Wilson, supra,* 139 Cal. 362; *Hillwig* v. *Boyer,* 81 Cal.App. 763 [254 P. 662].)

Appellant cites *Cardoza* v. *White,* 219 Cal. 474 [27 P.2d 639], as authority for his proposition that the power of sale here provides for something more than "only as security." In that case, the owner executed a deed to one Callaghan to secure a loan from the First National Bank of Livermore, "stating that if anything should happen to him, the property was to go to his daughter." After the indebtedness was paid off, the grantor instructed Callaghan to convey the property to the daughter, which he did. In an action to quiet title brought by the daughter against a creditor of the grantor who had levied execution on the property, the court held that

the deed was not a mortgage but a trust because it had not been given solely for security, in that the conveyance was made with the intention that the grantee should subsequently convey the title to another. The court held that it was only those transfers made as security for an act (other than transfers in trust) which were mortgages (Civ. Code, § 2924), and as it was contemplated between parties that an act should be done by defendant in relation to the real property, which act could not lawfully have been performed by him if he were not the holder and owner of the legal title, it must follow that the conveyance was what it purported to be on its face, a deed either absolute or in trust for the indicated purposes. There was, of course, no such feature in the case at bar.

On his contention that the conveyance constituted a trust, appellant relies upon *Vance* v. *Lincoln*, 38 Cal. 586, a case decided before the enactment into statute of the language used in the first part of section 2924, Civil Code. In that case a deed absolute was given as security for an indebtedness, the grantee to sell so much of the property as was necessary to pay off the obligation and endorse on the note from time to time as such sales were made the proceeds thereof, and when full payment was thereby made to redeem the property remaining to the grantor. The grantor brought an action to litigate the title against third parties in the name of the grantee, claiming that the conveyance passed title, and when defeated in that action brought another action in his own name against the same defendants, claiming that the transaction was a mortgage, the title never left him, and the previous action therefore was not a bar to the later action. The court held that the transaction was a declaration of trust since it was intended that the grantee should sell so much of the land as should be necessary to pay his note. "That he could not sell and convey the title, if he held only a mortgage, they were bound to know; but as trustee for his own benefit he could; hence, the transaction was intended to take, and was made to take, the latter form." Crockett, J., concurring specially, concurred, not only for the reasons stated in the majority opinion, but on the further ground that even if the transaction was intended as a mortgage, estoppel would operate to defeat the plaintiff.

This case is more in the nature of a trust than the one in question. The grantee apparently had the power to subdivide and sell portions of the property deeded as he saw fit,

applying the proceeds to the note, and it was contemplated that there would be, and in fact there was, a residue left over after payment in full. The residue would have been held by the grantee in trust for the grantor. The court, however, merely emphasized the fact that it was intended that the grantee convey title and it therefore could not be a mortgage. On that basis there seems to be no reason why this could not have been a mortgage with a power of sale as such a transaction was known and in use at the time (1869). (See *Fogarty* v. *Sawyer*, 17 Cal. 589 (1861).) There is no reference in the case to mortgages with power of sale. In any event, although there have been many subsequent cases in California discussing the difference between a deed absolute which constituted a trust and that which constituted a mortgage, not once has the Vance case been followed or even referred to. It is not in accord with the other cases in this state.

17 California Jurisprudence, page 746, seems to support appellant's contention for its says: "If by agreement the grantee is given power to sell the lands and apply the proceeds to the debt, the transaction is not merely a mortgage, but amounts to a declaration of trust." The authority for this statement is *Vance* v. *Lincoln, supra,* 38 Cal. 586, which as before pointed out is not the law today, and *Adams* v. *Lambard,* 80 Cal. 426 [22 P. 180]. In the latter case there was no question of the original conveyance of a mine constituting a mortgage. The court says (page 434): "It is conceded by all parties that the transaction . . . was not a mortgage, but that the deed conveyed the legal title. . . ." It was agreed that the grantees should work the mine if they so desired, pay off the indebtedness, and then convey a one-third interest in the mine to one of the grantors, who at the time of the original conveyance owned a two-thirds interest. The grantee could sell and pay off the indebtedness, rather than work the mine, if he so chose. After working the mine and paying off the indebtedness, the grantee refused to convey the one-third interest as promised. The court held (page 435): ". . . considering the *confidential relations of the parties* and the nature of the transaction" it was a trust. The trust had been fully executed and "the contingency had arisen under which Lambard had promised to reconvey. Under such circumstances a court of equity will enforce the trust." Neither the Vance case nor the Adams case are support for, or justify the above quoted statement in California Jurisprudence. A

mere reading of it discloses that it is erroneous, because if it were true there could be no such thing as a mortgage with power of sale.

Appellant also cites *Renton* v. *Gibson,* 148 Cal. 650 [84 P. 186], which, however, is easily distinguishable from the case at bar, as can be seen from the following excerpt from the decision (page 655): "We say, therefore, that the complaint itself, taken with the plaintiff's evidence in support of it, establishes that the instrument was something more than a mere mortgage, and that it did convey, and must of necessity have conveyed, the legal title to the property to defendant Gibson, for the purposes contemplated—the commencement and prosecution by Gibson of a suit to quiet title to the land in question, and the procuring a decree of the court to that effect. So far as these purposes were concerned the transfer could not have been a mortgage."

While plaintiff could sell at any time, it could be only for the purpose of applying the proceeds in payment of the debt. Appellant argues that because plaintiff had the power to sell without waiting for default, the conveyance could not have been a mortgage. This does not follow. He is confusing the time of payment with the fact of security. A mortgage can be given as security for a debt already due; also, it can be given for a note payable a definite time in the future and provide for foreclosure at the mortgagee's will before the due date.

The latter portion of section 2924, Civil Code, reads: "Where, by a mortgage . . . a power of sale is conferred upon the mortgagee . . . to be exercised after a breach of the obligation for which such mortgage . . . is a security, such power shall not be exercised" until a certain notice is given. Appellant argues that as the agreement provided that the power of sale could be exercised whenever plaintiff elected, rather than "after a breach of the obligation" the transaction could not come under section 2924. That would be too literal an interpretation of the section. "After a breach of the obligation" really means after the time the mortgagor has agreed that the sale or foreclosure might take place. The breach of the obligation might conceivably take place before the deed was executed. Such would be the case where a mortgage was given to secure a debt already due. In *Montgomery* v. *Spect, supra,* 55 Cal. 352, the court held a deed absolute to be a mortgage, although the grantor gave no note or memorandum for the payment of the debt, nor any promise to pay.

While it is true that plaintiff testified when asked the question directly that the $10,750 note was unsecured, the agreement (No. 7) provides otherwise. Moreover, plaintiff in other parts of his testimony admits, in effect, that this note was secured by the conveyance because he testified that had the note been paid, he would have transferred the property back to the Friedmans and that any moneys he received on the sale of the property over the liens would have been applied on this note.

Both parties agree that the conveyance did not constitute a deed of trust. (See *First Federal Trust Co.* v. *Sanders,* 192 Cal. 194 [219 P. 440], for an excellent discussion of the differences between a deed of trust and a mortgage.)

Concerning the facts of the case, appellant contends that having in mind that the rule is that "to convert a deed absolute into a mortgage, the evidence should be so clear as to leave no substantial doubt that the real intention of the parties was to execute a mortgage" (*Sheehan* v. *Sullivan, supra,* 126 Cal. 189), defendant has failed to offer such proof for the following reasons:

1. She did not allege in her answer that the transfer was intended to be a mortgage. In her amended answer, the pleading on which the case was tried, she alleged affirmatively that to secure the promissory note set forth in plaintiff's complaint she and her husband executed the deed to the City Title Insurance Company. She then set up the deed from it to plaintiff and the sale by plaintiff of the property to third persons and alleged the bar of sections 580a and 580c, Code of Civil Procedure. While she did not characterize the transaction, she did allege that the deed was given as security. She set up the facts rather than the legal conclusion. The plaintiff did not demur to the amended answer.

2. She did not testify that the conveyance was a mortgage. She apparently stood upon plaintiff's testimony in that respect. Moreover, the original transactions were handled by plaintiff and her husband.

3. She did not allege or prove fraud, mistake, or accident. This contention is based upon plaintiff's theory that parol evidence is not admissible to show a deed absolute to be a mortgage except where it is shown that because of fraud, mistake or accident a deed was executed instead of a mortgage. That this is not the law is shown by the authorities hereinbefore set forth.

4. She did not allege or prove that the value of the property was in excess of the admitted indebtedness; also, that the use in the agreement (No. 7) of the words "apply towards" the payment of the note, shows that the "agreement was not intended to secure the note of $10,750, but was intended only as a transfer for the benefit of a creditor, to enable him, if the real estate market improved, to obtain some payment *on account* of his unsecured note." This is a rather specious argument, and if carried to its logical conclusion would mean that there could be no lien given for security unless the value of that lien equals or exceeds the amount of the debt, and that, of course, is not the law.

Appellant connects with this argument plaintiff's testimony that to the best of his knowledge the property at the time of the execution of the instruments in question was worth only $18,500, which equalled the amount of the two prior encumbrances—(No. 4), the deed of trust to the bank and the deed of trust to plaintiff (No. 5). Presumably, the parties contemplated either that the property was worth more than that, that its value was uncertain, or that those two loans might be reduced in amount by the time of sale, for the agreement provided that plaintiff was to apply on the $10,750 note any proceeds from the sale over and above the "unpaid balance of the encumbrances."

5. Defendant did not allege or prove nontransfer of possession of the property. While the question of possession accompanying the delivery of a deed is one of the circumstances usually considered in determining whether the transaction is a mortgage or otherwise, it is not a conclusive circumstance. Even had possession been given plaintiff, that would not necessarily prove that the conveyance was not intended by both parties as a mortgage. Possession can accompany a mortgage without affecting its character as such. Therefore, the failure of defendant to prove nontransfer of possession is not important. Had there been a delivery of possession, plaintiff would, no doubt, have shown it.

6. Defendant relied solely upon the terms of the written instruments. This is not correct. Defendant also relied upon plaintiff's testimony as to the understanding of the parties. But even without the addition of plaintiff's testimony, the agreement (No. 7) itself raises the very reasonable inference that the transaction was a mortgage rather than a trust. That is the inference the trial court drew, and being a reasonable

one, it is therefore the inference this court must draw. (*Cauhape* v. *Security Savings Bank,* 118 Cal. 82 [50 P. 310].)

The evidence fully supports the conclusion that the conveyance here constituted a mortgage given to secure the $10,750 note. Therefore this action is one brought for the "deficiency upon a note secured by a . . . mortgage upon real property" in a "case in which the real property has been sold by the mortgagor [mortgagee] . . . under power of sale contained in such mortgage" and barred by the provisions of section 580c of the Code of Civil Procedure. It is also barred by the provisions of section 580a, Code of Civil Procedure, as it is a money judgment sought "for the balance due upon an obligation for the payment of which a . . . mortgage with power of sale upon real property . . . was given as security, following the exercise of the power of sale in such . . . mortgage" which "action must be brought within three months of the time of sale." (The references to these code sections are, of course, as they existed in 1940, at the time of the execution of the instruments in question here.)

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 30, 1947.