**Richard M. STOCKTON and Phyllis I. Stockton, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 69-2560.**

United States District Court, C. D. California.

Aug. 6, 1971.

Conrad H. Goerl, Oakland, Cal., for plaintiffs.

Robert L. Meyer, U. S. Atty., Charles H. Magnuson, Chief, Tax Div., Los Angeles, Cal., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

PREGERSON, District Judge.

This suit for refund of income taxes was tried before the court, a jury having been waived, on December 15, 16, 17,

and 23, 1970. The matter stands submitted following submission of post-trial briefs by both sides. Having considered the pleadings, evidence, briefs, and relevant authorities, the Court now makes its Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. At all times relevant hereto plaintiffs Richard and Phyllis Stockton (hereinafter referred to for convenience as "plaintiff") were residents of the Central District of California.

2. Prior to March 20, 1964, plaintiff owned, *inter alia*, the following assets:

(a) All the stock of South Gate Aluminum and Magnesium Co. ("SOGAM"), M. G. Metals Co. ("MG"), and Micro Precision, Inc. ("Micro");

(b) Improved real properties held for rental purposes.

3. Prior to January 29, 1964, SOGAM encountered severe financial difficulties, and was under pressure for payment by its creditors.

4. On January 29, 1964, plaintiff, MG, and Micro executed a "Creditors' Moratorium and Extension Agreement" with certain creditors of SOGAM (hereinafter referred to as "Creditors"). In exchange for a ninety-day moratorium on the debts of SOGAM, plaintiff, MG, and Micro personally guaranteed SOGAM'S debts, and pledged their business assets as security thereon.

5. On March 20, 1964, SOGAM, MG, Micro, and plaintiff entered into another arrangement with Creditors. The terms of this arrangement included the following:

(a) Business property of plaintiff and his three corporations would be "effectively transferred" to one Rattner. With respect to plaintiff's rental properties, referred to in Finding No. 2, *supra*, the transfer was to be "by appropriate instrument, transferring full and complete title to Rattner, subject, however, to existing encumbrances or liens of record."

(b) Rattner, who was to be paid a fee and reimbursed for his expenses, would undertake to liquidate the transferred property and pay over the proceeds to Creditors, to discharge the obligations plaintiff had guaranteed on January 29, 1964.

(c) A majority among Rattner, plaintiff, and Creditors (treated as one entity) was necessary to set "upset" prices for sale of the properties.

6. The March 20 arrangement was modified by all parties on June 26, 1964, in the following particulars, among others:

(a) Rattner nominated a corporation to take title to the assets.

(b) Plaintiff was given a contingent control over Rattner's compromise of accounts receivable.

(c) Any assets or sums remaining after the payment of all claims and reimbursement of Rattner were to be returned to plaintiff.

(d) Rattner and Creditors agreed to recommend and request that all creditors of plaintiff and his corporations should execute releases; but there was no commitment that such releases be granted.

7. Plaintiff claimed deductions for depreciation and expenses, relating to the rental properties, on his 1964 and 1965 tax returns. These deductions created losses which plaintiff attempted to carry back to the 1961 and 1962 tax years. The Internal Revenue Service allowed only a small part of these claims, particularly disallowing any losses attributable to the rental properties after March 20, 1964. Plaintiff protested these disallowances.

8. Among the deductions claimed were depreciation for 1965 on a building that had been demolished in 1964; and $15,000 for personal property taxes paid

with respect to fixtures in a building leased by plaintiff to SOGAM.

9. On his 1967 tax return, plaintiff claimed a deduction for expenses incurred in attending law school. This deduction was disallowed and plaintiff paid the resulting tax, but did not file a protest.

10. Any finding of fact that should properly have been designated a conclusion of law is hereby so denominated.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties to this action.

2. Up until March 26, 1964, plaintiff was in the trade or business of renting real property.

■ 3. The arrangement of March 20, 1964, supplemented on June 26, 1964, constituted an assignment for the benefit of creditors. Plaintiff's real property was totally transferred to Rattner, for the purpose of discharging the debts upon which plaintiff had become personally liable by virtue of the January 29, 1964, Moratorium Agreement, and for the correlative purpose of assuring the least possible risk to Creditors. The contingent supervisory and remainder rights of plaintiff under the March 20-June 26 arrangement did not constitute Rattner as his agent, or render the arrangement merely a mortgage. Rattner's control over the property and its disposition was virtually exclusive; plaintiff's was inconsequential. The preponderant indicia lead to the conclusion that the arrangement was an assignment for the benefit of creditors, which constitutes a trust. *Compare* Sabichi v. Chase, 108 Cal. 81, 41 P. 29 (1895) *with* Heath v. Wilson, 139 Cal. 362, 73 P. 182 (1903); *see* 5 Cal.Jur.2d, Assignments for Benefit of Creditors §§ 2, 3, 5, 10 (1967).

4. The purpose of this trust was to pay off plaintiff's continuing indebtedness to Creditors. Plaintiff is therefore to be treated as owner of the trust for income tax purposes. *E. g.*, 26 U.S.C. § 677; 26 C.F.R. § 1.677(a)–1(d); Douglas v. Willcutts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3 (1935); Helvering v. Blumenthal, 296 U.S. 552, 56 S.Ct. 305, 80 L.Ed. 390 (1935); Note, Assumption of Indebtedness by a Donee, 17 Stanford L.Rev. 98, 105–118 (1964). Correspondingly, plaintiff is entitled to claim deductions properly attributable to the trust. 26 U.S.C. § 671; 6 J. Mertens, The Law of Federal Income Taxation § 37.09, at n. 18 (1968 Rev.).

5. With respect to the rental properties, until sold, the trust was in the trade or business of renting real property. Plaintiff, deemed owner of the trust, is entitled to a net operating loss carryback from that business. *See* 26 U.S.C. § 172.

6. Plaintiff is entitled to the disallowed deductions claimed on his 1964 and 1965 tax returns with respect to the rental properties, excepting the depreciation deduction for property that previously had been demolished. Plaintiff's deduction of $15,000 in personal property taxes, paid with respect to fixtures that constituted his property, is allowable. 26 U.S.C. § 164.

■ 7. Plaintiff's claim for a refund based on the disallowance of the law school expense deduction taken in 1967 is not cognizable by this court. 26 U.S.C. § 7422.

8. Judgment should be entered for plaintiff in the appropriate amount, each party to bear its own costs of action. Counsel for plaintiff shall prepare, serve upon counsel for defendant, and lodge with the court a proposed judgment in accordance herewith.

9. Any conclusion of law that should properly have been designated a finding of fact is hereby so denominated.