[Civ. No. 2077. Fourth Appellate District.—August 24, 1938.]

MARK MORRIS, Appellant, v. OTTO RICKMEYER, Respondent.

Wallace & Crandall and Frank J. Macomber for Appellant.

Thomas C. McCarty and Fred E. Lindley for Respondent.

BARNARD, P. J.—This is an action to cancel and set aside a sale of real property under a trust deed and to declare a grant deed to be an equitable mortgage securing an indebtedness which had previously been secured by the trust deed.

The defendant held a note for $4,500 secured by a trust deed, both executed by the plaintiff on September 16, 1926, the note being payable three years after date. On January 28, 1933, while in default in the payment of principal, interest and delinquent taxes, the plaintiff executed a deed conveying the property to the defendant, which deed recited that the conveyance was made in full payment and cancellation of the above-described note. On the same day the parties hereto signed an agreement providing that the grant deed, together with the agreement, should be left with a certain bank in which both kept deposits; that the plaintiff, on or before June 1, 1933, should pay all delinquent interest and taxes on the property; that if he failed to do so the bank should immediately deliver the deed to this defendant; that the intention of the agreement was to convey the property to the defendant without expense and without foreclosure of the trust deed, in case the payments were not made before June 1, 1933; that if the payments were made the defendant would extend the note secured by the trust deed for a specified time; and that the plaintiff thereby instructed the bank to

deliver the deed to the defendant at any time after June 1, 1933. The agreement and the deed were placed in escrow with the bank.

Nothing was paid prior to June 1, 1933. Shortly thereafter the plaintiff asked the bank not to deliver the deed until the parties could see if they could work out some other plan. On August 8, 1933, the plaintiff sent $50 to the bank for the defendant, saying in a letter that he could not understand "your mention of foreclosure, except that Mr. Rickmeyer thought I didn't keep my promise", and further saying that he would come on August 21st, and "I would suggest that any foreclosure action await until that time". On September 23, 1933, the defendant caused to be recorded a notice of default and election to sell under the original trust deed. The plaintiff requested of the defendant and obtained various postponements of this sale from time to time until April 9, 1935. In the meantime he paid several payments amounting to $275, $240 of which was paid at the time of asking for postponements of the sale and upon condition that such requests be granted. In a letter dated June 28, 1934, requesting a further postponement of the sale the plaintiff stated that the defendant "holds a trust deed now in process of foreclosure".

On April 8, 1935, the plaintiff filed a petition in the United States District Court seeking relief under section 75 of the Bankruptcy Act in which he listed this property as one of his assets and stated that it was subject to a deed of trust securing a note for $4,500, identifying the deed of trust here in question by reference to the book and page of its recordation. After a hearing this petition was dismissed, all orders restraining this defendant were revoked, and that judgment became final. On May 20, 1935, the plaintiff filed an action in the Superior Court of San Diego County against this defendant and the trustee under this trust deed asking that a sale under the trust deed be enjoined for the reason that because of certain dealings between the beneficiary and trustor the default originally noticed and advertised had been cured, and for the further reason that the trust deed was no longer valid, since the lien thereof had been extinguished under the provision of section 2911 of the Civil Code. A demurrer was sustained and the judgment entered is now final. On June 8, 1935, the property was sold under

the trust deed, a trustee's deed was issued to the defendant and he has since been in possession of the property.

The present action was filed on November 20, 1936. Among other things, the plaintiff alleges the making of the agreement of January 28, 1933; that on the same day the plaintiff executed and delivered to the bank for the defendant a grant deed; that this grant deed was deemed by the parties to be a mortgage securing the note and all obligations theretofore secured by the trust deed; that the grant deed was a substituted security in lieu of the trust deed; that the agreement of January 28, 1933, was later modified by mutual oral consent and between August 8, 1933, and January 24, 1935, the plaintiff paid various sums which were accepted by the defendant as interest on the indebtedness; and that no proceedings to foreclose the substituted mortgage (grant deed) have ever been taken by the defendant. Among other things, the answer denied that the grant deed was ever delivered to or accepted by the defendant and alleged that the agreement and grant deed were never intended to constitute a mortgage; that the plan outlined in these instruments and originally contemplated by the parties was abandoned; that the plaintiff by seeking to enjoin the sale under the trust deed had made an election of remedies and the judgment rendered in that action was *res judicata;* and that the plaintiff had made an election of remedies and recognized the validity of the trust deed by seeking relief under section 75 of the Bankruptcy Act.

The court found practically all of the facts above stated and further found that in holding the grant deed and agreement the bank acted as an escrow holder and not as an agent of the defendant; that this escrow and the arrangement contemplated therein were abandoned by the parties; that the grant deed was not deemed by the parties thereto to be a mortgage; that it was not given to secure an indebtedness and was not deemed to be a substituted security in lieu of the existing trust deed; that the agreement of January 28, 1933, was not modified by oral consent but that the same and the grant deed and the escrow were abandoned by the parties; that all proceedings in connection with the foreclosure sale were regular; and that the plaintiff had no right, title and interest in the premises since the

completion of the sale under the deed of trust. Judgment followed and the plaintiff has appealed.

The appellant contends that the bank was the agent of the respondent; that since under section 1056 of the Civil Code delivery to an agent is delivery to the principal, the grant deed was delivered to the respondent; that this delivery, however, did not take place until June 1, 1933, when the requisite payments had not been made; that the agreement and the grant deed, purporting to be a conveyance in cancellation of the debt, were after delivery and after June 1, 1933, orally modified so as to continue the relation of debtor and creditor; that the continuing indebtedness, the fact that the appellant remained in possession of the property, and the fact that the land was worth more than it sold for at the trustee's sale conclusively establishes that this grant deed was an equitable mortgage; and that as such it must be foreclosed in the usual manner.

Whether a deed, absolute in form, is to be considered in equity as a mortgage "is a question of intention to be inferred from all the facts and circumstances of the transaction in which the deed was executed, taken in connection with the conduct of the parties after its execution". (*Montgomery* v. *Spect*, 55 Cal. 352.) The unusual situation is presented of a party asking a court to enforce strictly a technical rule of law in order to lay the foundation for the granting of equitable relief. The appellant ignores the intention of the parties with respect to the delivery of the grant deed and, after invoking a rule of law to establish a delivery in spite of any such intention, argues that the subsequent conduct of the parties discloses a continuing indebtedness and that, therefore, the deed must be held to have been a mortgage. The argument that the bank received the deed as the agent of the respondent is based upon evidence that the bank held a general power of attorney executed by this respondent in 1930, prior to taking a trip abroad, which had never been revoked. If section 1056 of the Civil Code applies at all it provides that a grant cannot be delivered to the grantee conditionally, and it would follow that the deed was delivered on January 28, 1933. It clearly appears, however, that there was no intention to deliver the deed at that time. The court found that in receiving and holding these papers the bank was acting

as escrow holder and not as agent of the respondent, and this finding is amply sustained by the evidence. It is admitted that the deed was never delivered to the respondent by the escrow holder and these facts are, in themselves, conclusive.

While the agreement of January 28, 1933, would appear to have been later either modified or abandoned, any possible modification was not merely to continue the relation of debtor and creditor but was to grant further extensions of time and to delay the delivery of the deed. The most reasonable explanation of the subsequent conduct of the parties is that any contemplated delivery of the deed was abandoned, and the court so found. The appellant sought many extensions of time and in his letters continued to refer to the original trust deed as an existing encumbrance held by the respondent. He so referred to it, and asked relief from it, in his petition under the bankruptcy law, and in his action in the superior court he alleged that this trust deed was an encumbrance on his property, that the respondent "is now the beneficiary of said trust deed", that the default thereunder had been cured and that the lien of the trust deed had been extinguished by lapse of time, and prayed for a permanent injunction against any sale under it. He thus attacked the validity of the trust deed in that action and should have raised therein any claim that it had been extinguished by a substituted mortgage. Whether or not the judgment entered in that action should be held to be *res judicata,* it appears from the conduct of the parties that the existence and validity of the trust deed as security for the indebtedness continued to be recognized up to the time a sale thereunder took place. Many months later this action was brought and the evidence and the justifiable inferences therefrom fully support the findings and conclusions of the court.

The judgment is affirmed.

Marks, J., concurred.