[Civ. No. 22622.   Second Dist., Div. Three.   May 12, 1958.]

REXFORD GREENE et al., Respondents, v. AUGUST M. COLBURN et al., Appellants.

Gray, Glass, Allen & Ransom for Appellants.

Floyd H. King for Respondents.

VALLÉE, J.—Appeal by defendants from a judgment decreeing plaintiffs are the owners in fee simple of certain realty subject to a mortgage for $1,800 in favor of defendants and that defendants reconvey the realty to plaintiffs free of the mortgage on receipt of $1,800 within five days after entry of judgment.

Charles Quandt was the owner of the realty. In the first part of May 1947 plaintiff Rexford Greene told defendant August Colburn he was interested in buying the realty. On May 23, 1947, Greene agreed to buy from Quandt for $3,500 with a down payment of $1,500, the balance at $35 a month including interest. Colburn loaned Greene $1,500 to make the down payment and Greene agreed to pay Colburn $7.50 a month as interest on the $1,500 loan. It was agreed between Greene and Colburn that when the balance of $2,000 was paid Colburn would execute a deed to the property to Greene and the latter would execute a deed of trust in favor of Colburn to secure the $1,500 and pay the same at the rate of $35 a month including interest.

Quandt showed Greene a deed to the property and Greene signed what he thought was a deed of trust in favor of Quandt for the $2,000. Greene thought the deed Quandt showed him was delivered to Colburn as additional security. However, Quandt conveyed the property to Colburn and Colburn executed a deed of trust for the $2,000. Greene did not know the property was conveyed to Colburn. He first learned this in March, 1955, during an unlawful detainer proceeding brought by Colburn against Greene. Colburn testified he took the Quandt deed so as to be secure in his investment and not to

have to foreclose in the event of default. Mrs. Colburn testified they took the deed from Quandt as security.

Greene took possession of the property from Quandt about May 23, 1947 and remained in possession continuously until the trial of this action. During that time he improved the property. He paid the taxes until 1950. After that time he was financially unable to and Colburn paid the taxes. In March, 1951, Colburn and Greene agreed that Colburn would pay the taxes and Greene "could pay him at the tail end of the agreement" with interest. They also agreed that when the $2,000 was paid by Colburn, Greene would make the monthly payments of $42.50 to Colburn so as to set up a reserve for taxes. The $2,000 was fully paid by about February 1953. Greene was unable to make the February 1955 payment.

In March, 1955, Colburn told Greene he (Colburn) was the owner of the property. In April, 1955, Colburn brought a proceeding in unlawful detainer against Greene. Greene prevailed. About November, 1955, Greene offered to pay Colburn in full. Colburn demanded $2,000 which was more than he was entitled to. This action followed.

It was stipulated at the trial that the amount unpaid by Greene with interest was $1,800.

The court found: about May 23, 1947, the Greenes, as mortgagors, and the Colburns, as mortgagees, entered into an agreement whereby defendants agreed to loan the Greenes the purchase price of the realty and in consideration therefor they agreed to repay the purchase price of $3,500 in monthly installments of $42.50 inclusive of interest; it was agreed that the $3,500 would consist of two separate loans: one for $2,000 repayable at $35 a month or more inclusive of interest commencing July 1, 1947, the other for $1,500 repayable at $35 a month or more inclusive of interest commencing after the loan of $2,000 was paid in full; pursuant to the agreement defendants loaned plaintiffs the $3,500; Quandt executed the deed to Colburn to hold on behalf of the Greenes to secure the repayment of the $3,500; it was agreed between the Greenes and the Colburns that the latter would execute their grant deed to the property to the Greenes when they tendered or paid the $3,500. Judgment for plaintiffs followed, from which defendants appeal.

It is urged the evidence is insufficient to justify the finding that there was an equitable mortgage. The point is untenable. Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act,

is to be deemed a mortgage. (Civ. Code, § 2924.) ■ A deed which is absolute on its face may be shown by parol evidence to have been intended as a mortgage to secure payment of a debt or for the performance of an obligation. (*Gronenschild* v. *Ritzenthaler,* 81 Cal.App.2d 138, 144 [183 P.2d 720] ; *Jensen* v. *Friedman,* 79 Cal.App.2d 494, 498 [179 P.2d 855].)

■ The test of a mortgage is whether the relation of debtor and creditor continues so that there is a subsisting debt after the conveyance; and where a deed, absolute on its face, is given to secure a debt, it will be held to be a mortgage. The intention of the parties must govern, and it matters not what particular form the transaction may take. (*Chapman* v. *Hicks,* 41 Cal.App. 158, 162 [182 P. 336].) ■ Whether a deed, absolute in form, is to be considered as a mortgage is a question of intention to be inferred from all the facts and circumstances of the transaction in which the deed was executed, taken in connection with the conduct of the parties after its execution. (*Morris* v. *Rickmeyer,* 28 Cal.App.2d 253, 257 [82 P.2d 472].) ■ Although, as here, the transaction involves three parties rather than two, wherein the one who takes title to the property holds it as trustee for the party to whom he loaned the purchase money, and also holds a lien as mortgagee for repayment of the loan, the usual rules applying to a deed absolute-mortgage case apply. (*Wilcox* v. *Salomone,* 118 Cal.App.2d 704, 710 [258 P.2d 845].)

■ Whether the evidence offered to change the ostensible character of the instrument is clear and convincing and whether it was intended to secure the payment of a subsisting debt are matters for the trial court. (*Beeler* v. *American Trust Co.,* 24 Cal.2d 1, 7 [147 P.2d 583] ; *Couts* v. *Winston,* 153 Cal. 686, 688-689 [96 P. 357].) ■ The determination of the trial court on conflicting evidence is not open to review. (*Sherman* v. *Sandell,* 106 Cal. 373, 375 [39 P. 797] ; *Wadleigh* v. *Phelps,* 149 Cal. 627, 637 [87 P. 93] ; *Wilcox* v. *Salomone,* 118 Cal.App.2d 704, 710 [258 P.2d 845].)

■ The evidence supports the findings. Colburn testified he took the Quandt deed as security for his investment. Mrs. Colburn testified the deed was taken as security. It is a fair inference from the evidence that the money paid by Colburn to Quandt was a loan to the Greenes. That the parties intended the deed from Quandt to the Colburns to be a mortgage to secure payment of the money loaned the Greenes by the Colburns fairly appears from the evidence. The relationship of debtor and creditor continued so that there was a sub-

sisting debt after the conveyance. There was ample evidence to support the conclusions of the trial court.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.